UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                      Plaintiff,                      No. 03-CV-70390-DT

vs.                                                        Hon. Gerald E. Rosen

MARCUS D. DICKINSON,

                      Defendant.
_____/

OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

              At a session of said Court, held in
              the U.S. Courthouse, Detroit, Michigan
              on    March 16, 2006

              PRESENT:  Honorable Gerald E. Rosen
                                  United States District Judge

I. INTRODUCTION

This student loan collection action is presently before the court on the second Motion for Summary Judgment filed by Plaintiff, the United States of America (the "Government"),[1] against Defendant Marcus Dickinson ("Dickinson"). Dickinson has not responded to this second motion and the time for doing so has long expired. Having reviewed and considered the Government's motion and brief and supporting evidence,, the Court has concluded that

---

[1] The Court denied Plaintiff's first motion for summary judgment in an Opinion and Order entered on September 30, 2004 to allow Plaintiff to establish his entitlement to a statutory discharge.

oral argument is not necessary. Therefore, pursuant to Local Court Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II .PERTINENT FACTS

On July 10, 1989, Marcus Dickinson signed two Promissory Notes for educational purposes, borrowing $2,625.00 in the form of a Stafford Loan ("SLS") accruing at 10.00% interest annually, and $4,000.00 in the form of a Supplemental Loan ("Plus/SLS") accruing at 9.130% interest. Mr. Dickinson intended to utilize the loans for educational purposes, namely, enrollment at the National Technical Institute ("NTI") in Detroit, Michigan. Dickinson's loans were to attend NIT from August 1989 through April 1990. *See* Government's Ex. 1 and 2.

In accordance with routine practice, the loan proceeds were distributed directly to NTI, which was then charged with application of the proceeds towards Mr. Dickinson's tuition. In his initial responses in this action, Mr. Dickinson stated that he began attending classes at NTI but before the completion of the semester for which loan funds were paid, NTI declared bankruptcy and closed its doors. Dickinson, thus, was unable to complete his course work. However, he was never provided with a disbursement or refund check. [*See* Dickinson Affidavit, ¶¶ 2-6.]

The Government alleges that on December 4, 1990, and March 12, 1991, Dickinson defaulted on each respective loan. The guaranty agency paid the Government's claim, and was subsequently reimbursed by the Department of Education, and the Government, in turn, was assigned the rights to collect the debt. No payments having been made by Defendant on

the loans, on January 30, 2003, the Government initiated the present action against Mr. Dickinson, alleging failure to pay his student loan debts as its sole cause of action.

### III. DISCUSSION

A.   STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases – *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) – ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[2]  According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that parties case, and on which that party will bear the proof.

Having reviewed the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment.  They are summarized as follows:

---

[2] "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials."   10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure § 2727 (1996 Supp.).

* Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

* The movant must meet the initial burden of showing "the absence of a genuine issue material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1070, 1087 (6th Cir. 1996). *See also, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989). The Court will apply the foregoing standards in deciding Plaintiff's Motion for Summary Judgment in this case.

B.  DEFENDANT HAS NO VALID DEFENSE FOR HIS NON-PAYMENT OF THE LOANS

As indicated above, Dickinson does not deny that he has not made payments on the two loans. However, in response to the Government's first motion for summary judgment, Dickinson stated in the form of a sworn Affidavit, that NTI filed for bankruptcy and closed during the semester for which the loan funds were paid, thereby preventing him from fulfilling that semester's course work. [*See* Plaintiff's Affidavit, ¶¶ 2-4.] The Government did not

4

refute Plaintiff's sworn affidavit statement that NTI filed for bankruptcy and closed during the semester for which his student loan proceeds were paid to the school. More importantly, the Government failed to even mention that, under the circumstances as presented by Mr. Dickinson, his student loan might have been eligible for discharge by operation of law.

34 C.F.R. § 682.402 sets forth "Rules governing. . . **discharge of loans due to** death, total and permanent disability, [and] **attendance at a school that closes**. . . ." 34 C.F.R. § 682.401(a) (emphasis added). Subsection (d) of § 682.402 sets forth the particular rules for closed schools. In pertinent part, § 682.402(d) provides:

> (d) *Closed school*.
>
> (1) *General*.
>
>> (i) The Secretary reimburses the holder of a loan received by a borrower on or after January 1, 1986, and **discharges the borrower's obligation with respect to the loan** in accordance with the provisions of paragraph (d) of this section, **if the borrower** (or the student for whom a parent received a PLUS loan) **could not complete the program of study for which the loan was intended because the school at which the borrower (or student) was enrolled, closed, or the borrower (or student) withdrew from the school not more than 90 days prior to the date the school closed**. This 90-day period may be extended if the Secretary determines that exceptional circumstances related to a school's closing would justify an extension.
>
> \* \* \*
>
> (2) *Relief available pursuant to discharge*.
>
>> (i) **Discharge under paragraph (d) of this section relieves the borrower of an existing or past obligation to repay the loan and any charges imposed or costs incurred by the holder**

> **with respect to the loan that the borrower is, or was otherwise obligated to pay.**
>
> (ii) A discharge of a loan under paragraph (d) of this section qualifies the borrower for reimbursement of amounts paid voluntarily or through enforced collection on a loan obligation discharged under paragraph (d) of this section.
>
> (iii) **A borrower who has defaulted on a loan discharged under paragraph (d) of this section is not regarded as in default on the loan after discharge,** and is eligible to receive assistance under the Title IV, HEA programs.
>
> (iv) A discharge of a loan under paragraph (d) of this section must be reported by the loan holder to all credit reporting agencies to which the holder previously reported the status of the loan, so as to delete all adverse credit history assigned to the loan.

34 C.F.R. § 682.402(d)(1), (2) (emphasis added.)

To qualify for discharge under the above regulation, however, Mr. Dickinson had to

> submit a written request and sworn statement to the holder of the loan [here, the Government]. The statement need not be notarized, but must be made by the borrower under the penalty of perjury, and, in the statement, the borrower must state --
>
> (i) Whether the student has made a claim with respect to the school's closing with any third party, such as the holder of a performance bond or a tuition recovery program, and if so, the amount of any payment received by the borrower (or student) or credited to the borrower's loan obligation;
>
> (ii) That the borrower. . .
>
> > (A) Received on or after January 1, 1986,. . . a loan disbursed, in whole or in part, on or after January 1, 1986 to attend a school;
> >
> > (B) Did not complete the educational program at that school because the school closed while the student was enrolled. . . or

6

> the student withdrew from the school not more than 90 days before the school closed; and
>
> (C) Did not complete the program of student through a teach-out at another school or by transferring academic credits or hours earned at the closed school to another school;

(iii) That the borrower agrees to provide, upon request by the Secretary or the Secretary's designee, other documentation reasonably available to the borrower that demonstrates, to the satisfaction of the Secretary or the Secretary's designee, that the student meets the qualifications in paragraph (d) of this section ; [and]

(iv) That the borrower agrees to cooperate with the Secretary or the Secretary's designee in enforcement actions . . . and to transfer any right to recovery against a third party [that he might have]. . . .

*See* 34 C.F.R. § 682.402(d)(3).

The regulations, however, do not provide any time limit for providing the required sworn statement. (In fact, § 682.402(6)(J) provides, "[a] borrower's request for discharge may not be denied solely on the basis of failing to meet any time limits set by the lender, guaranty agency, or the Secretary." 34 C.F.R. § 682.402(J)). Since there was no time limit for doing so, the Court determined that Mr. Dickinson should be afforded an opportunity to comply with the discharge procedures set forth in the regulations. Therefore, the Court denied the Government's motion for summary judgment.

After Plaintiff raised the closed school issue in his responsive pleadings, Plaintiff promptly sent Defendant Dickinson the forms necessary to apply for a student loan discharge, pursuant to § 682.402. The Department of Education thereafter reviewed Defendant's application and determined that Mr. Dickinson does not qualify for the loan discharge:

> After a thorough review of your application, the U.S. Department of Education has determined that you do not qualify for loan discharge. The criteria by which a borrower may qualify for discharge of a student loan liability due to the closure of a school are set forth in C.F.R. §682.402 which states that the student must have been in attendance when the school closed or withdrawn not more than 90 days prior to the closure date. **Our records indicate that you last attended National Technical Institute 4/10/90 and that the school closed on 8/15/91. Because you were not in attendance at the school in question within 90 days of the closure date, you do not meet the criteria for closed school discharge.**

*See* Plaintiff's Ex. 10 (emphasis added).

Because Defendant does not qualify for closed school discharge of his loan, and because Defendant has proffered no other viable defense to his loan obligations, the Government has requested entry of summary judgment in its favor.

Having reviewed the record of this case and the evidence presented by the Government, the Court agrees that, having been granted the opportunity to establish his qualifications for discharge, Plaintiff was unable to do so. Mr. Dickinson has failed to establish that he attended National Technical Institute within the 90 days preceding its closure. In fact, in his Application for Student Loan Discharge-Closed School, when asked in Question 13, "Were you attending the School when it closed?", Dickinson responded by answering "yes" but added that he was "uncertain" as to the school's closure date. He has not come forward with any evidence to refute the Government's stated school closure date of August 15, 1991, nor has he refuted the school's records indicating that his last date of attendance was April 10, 1990, i.e., more than a year before the school closed.

For all of these reasons, the Court finds that there is no genuine issue as to any material fact that Marcus Dickinson is in default of his student loans and that the Government is entitled to a judgment as a matter of law for the full amount of his indebtedness.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's November 3, 2005 Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that Judgment be entered in favor of the United States of America and against Defendant Marcus Dickinson in the amount of $6,969.41, plus pre-judgment interest from the date of the Complaint, plus filing costs in the amount of $250, with post-judgment interest to accrue on the unpaid judgment at the applicable legal interest rate.

                                      s/Gerald E. Rosen
                                      Gerald E. Rosen
                                      United States District Judge

Dated: March 16, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 16, 2006, by electronic and/or ordinary mail.

                                      s/LaShawn R. Saulsberry
                                      Case Manager